IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 07-4046-01-CR-C-NKL |
| | ) | |
| WILLIAM HENRY BLACKBURN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT, RECOMMENDATION AND ORDER

Before this court are defendant William Henry Blackburn's motions to suppress evidence and statements. The Government responded in opposition and a hearing was held on the motions on April 8, 2008.

### Background

On July 24, 2007, a search warrant was issued by the Morgan County Circuit Judge for defendant's residence and automobile shop in Morgan County, Missouri. The application for the warrant was made by Morgan County Sheriff's Detective J.D. Williams and was also signed by Morgan County Prosecuting Attorney Marvin Opie. The search warrant was executed by the members of the Morgan County Sheriff's Department and Mid-Missouri Drug Task Force.

During the execution of the search warrant, and upon seizure of evidence identified in the warrant, defendant was taken into custody by Detective Williams. Subsequently, while still on the scene of the search, defendant made incriminating statements to Chief Deputy David Salzman. Defendant stated he had purchased the AK-47 assault rifle recovered from his residence from another individual, and stated his intention to sell the rifle later. Defendant also made statements about the methamphetamine found in his residence. After the execution of the warrant, defendant was transported to the county jail, located at the Sheriff's Department, where Detective Williams interviewed him. During this interview, defendant made statements to Detective Williams about the gun and methamphetamine found in his residence.

Defendant has moved to suppress the search and all evidence and statements flowing therefrom.

### Discussion

Motion to Suppress Evidence

Defendant first challenges the validity of the warrant. Defendant claims the prosecutor, Marvin Opie, had previously represented him in an unrelated criminal drug case and, therefore, should not have reviewed or signed the application for search warrant.

The credible evidence at the hearing shows that Mr. Opie merely signed the application, pursuant to Mo. Rev. Stat. § 542.276, which imposes a ministerial requirement for a prosecutor to sign a search warrant application. Moreover, Mr. Opie was not the applicant and no information in the affidavit was attributable to him. There is no evidence that Mr. Opie provided any privileged information to Detective Williams. Detective Williams had the affidavit written and notarized prior to Mr. Opie having knowledge of it, and no changes were made to the affidavit after Mr. Opie's review. Mr. Opie testified that at the time of his review of the warrant application, he may have stated to Detective Williams that defendant had a prior conviction, but that such information is public and is not privileged. Additionally, Detective Williams testified he was aware of defendant's prior conviction prior to his talking to Mr. Opie.

Mr. Opie's participation in defendant's case was limited to the exercise of his ministerial duty under statute to review and sign the warrant application. There is no evidence that he utilized information gained through any prior representation of defendant to improperly secure the warrant. Mr. Opie's role in signing the search warrant application provides no basis to suppress the search warrant.

Defendant also challenges that the affidavit in support of the search warrant as insufficient to support a finding of probable cause that narcotics or stolen property would be found on his property. Whether probable cause exists depends on the totality of the circumstances. United States v. Gabrio, 295 F.3d 880, 882-83 (8th Cir. 2002) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). However, the totality of circumstances requires a showing of facts "sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." Gabrio at 883 (quoting United States v. Wells, 223 F.3d 835, 838 (8th Cir. 2000)).

2

"An informant's tip can be sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' or if the tip 'is corroborated by independent evidence.'" Gabrio at 883 (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)).

Here, the probable cause was based on the tip of a confidential informant. The identity of the confidential informant was revealed at the suppression hearing upon order of the court.[1] Defendant has come forward with no evidence to suggest that the informant did not provide the Government with the information set forth in the affidavit supporting the search warrant. The informant specifically identified stolen items he saw at defendant's residence, and identified where those items had been stolen from. This information was corroborated by the burglary report of the Moniteau County Sheriff's Department which identified items that had in fact been stolen from the Moniteau County location advised by the informant. The confidential informant's information about an all-terrain vehicle stolen from the Moniteau County location, led to the recovery of that item. The informant's information was shown to be reliable at least in part. The informant's criminal history and fact that he is currently under federal investigation does not in this case undercut his "general believability" and is not critical to the issue of probable cause. Gabrio, 295 F.3d at 884. "[T]ipsters often provide information in hopes of obtaining leniency with respect to their own situation and that does not necessarily mean they are unreliable." Id. Based on the credible evidence presented at the hearing, this court finds the informant's tip and the corroboration were sufficient to establish probable cause, and therefore, the warrant to search defendant's residence was properly issued.

Additionally, even if this court were to conclude the affidavit was insufficient to establish probable cause, the search is valid because the officers executing the warrant acted in objective good faith in executing the warrant, which was issued by a detached neutral judge who found there to be probable cause. United States v. Leon, 468 U.S. 897 (1984). The good-faith exception allows evidence obtained pursuant to a facially valid search warrant, later found to be invalid, to be admissible if the executing officers acted in good faith and in objectively

---

[1] Motion seeking disclosure of the identity of the confidential informant was granted by the court after consideration of defendant's argument challenging the underlying information in the facially valid search warrant affidavit.

reasonable reliance on the warrant.  Id.  Reliance on a judge's determination of probable cause is reasonable in the execution of a search warrant unless a reasonably well-trained officer would have known the search was illegal despite the judge's authorization.  Id. at 923, n.23.  The Supreme Court states that because "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause . . . 'great deference' to a magistrate's determination" is given.  Id. at 914.  The court finds reliance on the warrant by executing officers to be reasonable and therefore, the good-faith exception would apply.

      Defendant also challenges that the search warrant was impermissibly vague.  The Fourth Amendment prohibits "general warrants" in an effort to prevent exploratory rummaging in a person's belongings by requiring that a "particular description" of the thing to be seized be stated in the warrant.  Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971).  The constitutional standard for particularity of description in a search warrant is met if the description is sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.  Steele v. United States, 267 U.S. 498 (1925); United States v. Davis, 557 F.2d 1239, 1248 (8th Cir.1977); United States v. Johnson, 541 F.2d 1311, 1313 (8th Cir.1976).

      In the instant case, the warrant provides for seizure of (1) items associated with the use or sale of methamphetamine, including records associated with the use or sale of methamphetamine, proceeds from the sale of methamphetamine, and firearms associated with the use or sale of methamphetamine, and (2) any stolen items.

      The court finds that the warrant's description of methamphetamine related evidence to be seized, although somewhat generic, was sufficiently particular to enable the officers to reasonably identify the place to be searched and the objects to be seized.  Adequacy of a warrant description is one of "practical accuracy rather than technical nicety."  Johnson, 541 F.2d at 1313.  The degree of specificity required is flexible, and may vary depending on the circumstances and the type of items involved.  United States v. Davis, 542 F.2d 743, 745 (8th Cir.1976).  Where the precise identity of goods cannot be ascertained, at the time the warrant is issued, naming generic classes of items is sufficient.  Johnson, 541 F.2d at 1314.  For example, identifying items generically as "records" of a particular crime can provide for a sufficiently

4

particular description of the items to be seized in a search warrant.  See United States v. Lucas, 932 F.2d 1210, 1215-16 (8th Cir.1991) (concluding a search warrant authorizing the seizure of books, records, receipts, notes, ledgers and other papers relating specifically to the transportation, ordering, purchase and distribution of controlled substances" was sufficiently particular to include the seizure of an answering machine and its cassette tape because the seizure of records refers to 'generic class of records'").  Further, the court notes that the warrant's description of "weapons associated with the use or sale of methamphetamine," is based on a well recognized nexus between firearms and drug trafficking. United States v. Espinosa, 300 F.3d 981, 984 (8th Cir. 2002).

    The search warrant's description of "stolen items," is based on the affidavit submitted in support of probable cause for the search.  This affidavit references and incorporates a police report of the burglary that occurred in Moniteau County on July 15, 2007.  The burglary report sets out with specific detail the property taken during the burglary, including wrenches described by size and type.  The Eighth Circuit Court of Appeals held in United States v. Gamboa, 439 F.3d 796, 807 (8th Cir. 2006), that a warrant which failed to list the objects of the search but incorporated a document listing the items to be seized did not violate the particularity requirement, for an "affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant."  Therefore, based on the burglary report incorporated with the affidavit in support of the search warrant, the warrant's description of "stolen items" is sufficient to permit officers to reasonably ascertain and identify the objects to be seized from Blackburn's residence and automobile shop.

    The underlying measure of adequacy of the description provided in a search warrant is whether, given the specificity in the warrant, a violation of personal rights is likely.  Johnson, 541 F.2d at 1313; United States v. Muckenthaler, 584 F.2d 240, 245 (8th Cir.1978).  A violation of Blackburn's constitutional rights was not likely based on the description of the items in the warrant to be seized.

    Finally, the court finds no basis to support defendant's claims that the information in support of probable cause was too remote to authorize a search for drug-related or stolen items.

5

The drug sale in support of the warrant was witnessed by the confidential informant on July 17, 2007, and the burglary of the Moniteau County residence, from which the informant identified the wrenches in defendant's home, occurred on July 15, 2007. The search warrant of defendant's home was executed on July 24, 2007. The Eighth Circuit has specifically held that there is no bright-line test for determining when information is stale, and that time factors must be examined in the context of a specific case and the nature of the crime under investigation. United States. v. LaMorie, 100 F.3d 547, 554 (8th Cir. 1996). In LaMorie, the Eighth Circuit held that a two-week period between when an informant last saw stolen property in a defendant's trailer and the execution of the search warrant did not render the informant's identification of the defendant's trailer as the site of stolen items as too stale to support a finding of probable cause. Id. at 554-555. Additionally, in United States v. Smith, 266 F.3d 902, 904-905 (8th Cir. 2001), the court held that in investigation of narcotics operations, intervals of weeks or months between the last-described act and the application for a warrant do not make the information stale.

Motion to Suppress Statements

Defendant claims that prior to being advised of his Miranda rights, Morgan County Chief Deputy Sheriff Salzman questioned him about the gun found by the law enforcement officers during the execution of the search warrant for his home, and that he provided answers. Defendant claims that after being questioned without the benefit of his Miranda warnings while in custody at the scene of the search, Detective Williams subsequently questioned him at the Sheriff's Department using the information obtained prior by Chief Deputy Sheriff Salzman, and proceeded to violate his rights using the "two-step interrogation technique" held unconstitutional in Missouri v. Seibert, 542 U.S. 600 (2004).

The credible evidence presented at the hearing indicates that subsequent to items of evidence being discovered in defendant's residence, defendant was handcuffed and taken into custody by Detective Williams. Upon being escorted out of his residence by Detective Williams, defendant demanded to speak with Chief Deputy Salzman, who was on location outside the residence. In light of defendant's demand, Detective Williams left defendant in the custody of Chief Deputy Salzman at the scene of the search, and returned to the Sheriff's Department to retrieve a forgotten item.

6

While in the custody of Chief Deputy Salzman, defendant demanded that Salzman tell him what was going on. Upon this request, Chief Deputy Salzman proceeded to remove his Miranda warnings card from his pocket to read plaintiff his rights. However, Chief Deputy Salzman was cut short by defendant's statement that he didn't need to be read his rights because he had already been advised. At this point, defendant began to freely speak about the AK-47 assault rifle found in his residence, stating he purchased the gun from another individual with the intent to resell it. Defendant also provided information as to the methamphetamine items found in his residence.

Upon completion of the search of defendant's residence, defendant was transported to the county jail where Detective Williams again made contact with him. Defendant was brought into the Sheriff's Department break room where Detective Williams presented a Miranda warning form to defendant, which advised defendant of his Miranda rights. Detective Williams also verbally read to defendant his Miranda rights. Detective Williams signed and dated the warning form, and defendant then signed the waiver of rights form, acknowledging that he understood his rights and that he wished to speak with investigators. The subsequent interview with defendant lasted approximately twenty minutes, and at no time during the interview were threats or promises made to the defendant. Detective Williams asked defendant where he got the rifle and defendant identified the individual from whom he purchased the rifle. Defendant was also questioned about the other items of evidence located in his home, including the wrenches. Defendant stated he got the wrenches from an individual who owed him money, and that he accepted the wrenches as payment.

The credible evidence presented at the hearing also shows that despite defendant's statement to Chief Deputy Salzman at the scene of the search, that he had already been advised of his Miranda rights, he in fact, had not been advised of his rights. Therefore, defendant's statements to Chief Deputy Salzman were made while defendant was in custody, without the Miranda warnings being given to him.

Miranda v. Arizona, 384 U.S. 436 (1966), establishes a rule of law providing that statements obtained from a defendant during a custodial interrogation without full warning of constitutional rights are presumed inadmissable as having been obtained in violation of the Fifth

7

Amendment privilege against self-incrimination. Here, although in custody and not given the warnings as set forth in Miranda, defendant's statements to Chief Deputy Salzman were not the result of an interrogation. Without there being an interrogation, the requirements of Miranda did not arise. United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005). Additionally, the credible evidence is that defendant's statements to Chief Deputy Salzman were made voluntarily and were not the result of any improper coercive tactics which would violate the Fifth Amendment. See Oregon v. Elstad, 470 U.S. 298, 314 (1985) (absent deliberate or improper tactics in obtaining defendant's initial statement, mere fact that defendant made an unwarned admission does not warrant a presumption of compulsion in violation of the Fifth Amendment). Therefore, because defendant's statements to Chief Deputy Salzman were voluntary and were not in response to interrogation, they do not violate the Fifth Amendment privilege against self-incrimination, and are admissible regardless of whether defendant was given the Miranda warnings. United States v. Londondio, 420 F.3d 777, 783 (8th Cir. 2005).

Defendant's subsequent statements made at the Sheriff's Department to Detective Williams, however, were the result of an interrogation, and therefore, Miranda was applicable. Nonetheless, prior to Detective Williams interrogating defendant or defendant making any statements to Detective Williams, defendant was given his Miranda warnings. Defendant signed a waiver form acknowledging his understanding of his rights, indicating he was waiving his rights, and that he was willing to make a statement and answer questions. Defendant's statements made to Detective Williams, are therefore, admissible because the credible evidence presented shows that defendant's statements were voluntarily made after a knowing and voluntary waiver of all rights.

Defendant's claims that Detective Williams and Chief Deputy Salzman obtained his statement at the Sheriff's Department as a result of using the unconstitutional Missouri two-step interrogation method is not supported by the credible evidence presented at the hearing. In Missouri v. Seibert, 542 U.S. 600 (2004), the court held that a two-step process of interrogations whereby interrogation was used to obtain a confession prior to giving the Miranda warnings, after which Miranda warnings were given and a confession again obtained, was unconstitutional. Id. The Court held that such a deliberate strategy to undermine Miranda was a violation of the Fifth

8

Amendment. Id. Unlike Missouri v. Seibert, in the instant case, defendant's initial statements made to Chief Deputy Salzman were not the result of express questioning or coercive action, or any type of interrogation. Second, in the instant case, there is no evidence that Detective Williams exploited the unwarned admissions previously made by defendant to pressure him in waiving his right to remain silent. In fact, credible testimony at the hearing fails to show that Detective Williams was even made aware of the unwarned statements defendant had made earlier to Chief Deputy Salzman. The evidence does not support defendant's claim that Detective Williams and Chief Deputy Salzman intended to circumvent Miranda. There is no basis for suppressing the statements made by defendant to Chief Deputy Salzman or Detective Williams. See United States v. Londondio, 420 F.3d at 783-84 (holding that when there is no evidence to support that law enforcement intended to circumvent Miranda, in-custody defendant's voluntary statements are admissible).

## Motion to Dismiss Indictment

Defendant seeks to dismiss the indictment filed against him on grounds that the indictment purports to allege a violation of 18 U.S.C. § 922(g)(1), but fails to state facts to support the offense and that the grand jury proceedings were improper.

Upon review, this court finds the indictment is not ambiguous, because it specifically identifies defendant as a prior felon, and that he possessed a firearm in his residence. The indictment properly alleges a violation by defendant of Title 18, United States Code, §§ 922 (g)(1) and 924(a)(2). Moreover, defendant advised the court he has no evidence to present to support his challenges to the grand jury proceedings. This court finds no basis for concluding that 18 U.S.C. § 922(g)(1) is unconstitutional or that the grand jury was somehow improperly selected, drawn or summoned. Nor is there any basis for finding the Government engaged in inappropriate activity or acted in an improper fashion. There is no basis for granting defendant's motion to dismiss the indictment.

## Motion for Bill of Particulars

Defendant's motion asks for this court to order the Government to provide him with a bill of particulars. Defendant claims that the indictment fails to allege how he possessed a firearm and the exact location and time where the Government claims defendant possessed a firearm.

9

Defendant also claims the indictment fails to allege how the firearm was possessed and affected commerce, the names and addresses of any other person or persons who were present when defendant allegedly possessed the firearm and whether a transfer of the weapon is alleged as the basis for establishing that defendant possessed a firearm. Defendant argues that the indictment is not sufficiently precise to enable him to prepare a defense to avoid the danger of unfair surprise at trial or to protect him against a second prosecution for the same alleged offense.

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the court may direct the Government to file a bill of particulars in addition to the issuance of an indictment. "A bill of particulars serves to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite." United States v. Hernandez, 299 F.3d 984, 989-90 (8th Cir.2002). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Wessels, 12 F.3d 746, 750 (8th Cir.1993) (citing United States v. Young, 618 F.2d 1281, 1286 (8th Cir.1980)). The granting or denial of a motion seeking a bill of particulars lies within the broad discretion of the trial court. United States v. Sileven, 985 F.2d 962, 966 (8th Cir. 1993). Further, even if an indictment is determined to be insufficient, the availability of information as to the specific conduct and facts of the charge from other sources, such as hearings and the "open-file" policy of the United States Attorney's Office, eliminates the need for a bill of particulars. See United States v. Fleming, 8 F.3d 1264, 1265 (8th Cir.1993) (stating that there was no need for a bill of particulars where, despite a question as to the conduct complained of in the indictment, the defendant learned of the facts alleged by the Government during an evidentiary hearing); United States v. Canino, 949 F.2d 928, 949 (7th Cir.1991) (the nature and operations of the "open-file" policy is an adequate form of information retrieval making a bill of particulars unnecessary). A bill of particulars may not be used as a discovery tool or to obtain detailed disclosure of the Government's evidence and theories. United States v. Wessels, 12 F.3d at 750.

10

The indictment here sets forth the essential elements of the offense charged under 18 U.S.C. § 922(g)(1). The indictment is adequate to protect the defendant's double jeopardy rights and adequately inform him of the issues he will face at trial. Defendant has raised no special or particular problem in preparing for trial which necessitates more specificity. Based upon the foregoing, this court finds the indictment to be legally sufficient, and that a bill of particulars is not required. Further, the court notes that a bill of particulars is not required when information necessary for the defendant's defense can be obtained through some other satisfactory form. The court finds that the indictment, coupled with the Government's open-file policy allowing liberal access to discovery, is clearly legally sufficient to, and fairly informs the defendant of, the specific conduct which provides a basis for the charges against him.

### Motion for Government to Disclose Intention to Use Rule 404(b) Evidence

Defendant asks the court to direct the Government to disclose, within ten days, evidence of other crimes, wrongs or acts that it intends to introduce at trial, pursuant to Fed. R. Crim. P. 404(B), together with the basis for the admissibility of such evidence. Rule 404(b) provides that evidence of other crimes, wrongs or acts may be admissible for proof of motive, opportunity, intention, preparation, plan, knowledge, identity or absence of mistake or accident, provided that upon request by the accused, the prosecution shall provide reasonable notice in advance of trial.

In response, the Government refers to the standing discovery order entered by the court on November 29, 2007, requiring the Government to disclose Rule 404(b) evidence to defendant no later than seven days before trial if it determines that any Rule 404(b) evidence will be used at trial.

Based on the scheduling order entered by this court, which is consistent with the requirements of Rule 404(b), there is no basis for granting defendant's motion.

### Motions for Discovery

In response to defendant's motions seeking discovery, defendant was advised at the hearing of the Government's open-file policy. Defendant's motions for discovery are, therefore, denied as moot.

### Motion for Leave to File Additional Pretrial Motions

At the hearing, defendant advised no further pretrial motions are intended to be filed at this time. Therefore, defendant's motion for leave to file additional pretrial motions is denied as moot.

### Defendant's Oral Motion to Continue

Defendant, at the hearing, made an oral motion to continue the April 21, 2008 trial setting. Defendant has already filed a waiver of his rights under the Speedy Trial Act. The Assistant United States Attorney indicated at the hearing that he has no objection to the granting of the requested continuance.

In any case in which a plea of not guilty is entered, the defendant's trial shall commence within seventy days from the filing of the information or indictment or the date of defendant's first appearance, whichever comes last. 18 U.S.C. § 3161(c)(1) (Speedy Trial Act). However, in computing the time within which trial of any offense must commence, any period of delay which results from a continuance granted by a judge at the request of defendant or his or her counsel, which serves the end of justice, shall be excluded from computing the time. 18 U.S.C. § 3161(h)(8)(A). The Speedy Trial Act requires that the court set forth its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. Factors which this court shall consider in determining whether to grant a continuance include whether the failure to grant such a continuance would be likely to result in a miscarriage of justice and whether or not the case is so complex that it is unreasonable to expect adequate preparation for trial within the time limit established.

Defendant states he needs additional time to prepare for trial or work out a plea, after the motions to suppress are ruled. Failure to grant the continuance would deny counsel for the defendant the reasonable time necessary for effective preparation, taking into account the exercise of due diligence. The court finds that the ends of justice served by granting a continuance outweigh the best interests of the public and defendant Blackburn in a speedy trial. The motion for continuance of the April 21, 2008 trial setting will be granted and the case will be reset for jury trial on the Joint Criminal Docket which commences on June 16, 2008.

IT IS, THEREFORE, ORDERED that defendant's oral motion to continue the April 21, 2008 trial setting is granted, and this case is reset for trial on the June 16, 2008 Joint Criminal Docket. [46]  It is further

ORDERED that the additional period of delay in commencing defendant's trial caused by this continuance shall be excluded in computing the time within which this trial shall commence under the Speedy Trial Act.  It is further

ORDERED that defendant's motions for leave to file additional pretrial motions and for discovery are denied as moot. [18, 22, 23]  It is further

ORDERED that defendants' motion for disclosure of informant is granted as ruled on the record. [21]  It is further

RECOMMENDED that defendant's motions to dismiss, for bill of particulars, for disclosure of Rule 404(b) evidence, to suppress evidence and to suppress statements be denied. [14, 16, 17, 19, 20]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days.  If additional time is needed, a motion for an extension of time must be filed within ten days.  The motion should state the reasons for the request.  See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983).  Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 28th day of April, 2008, at Jefferson City, Missouri.


William A. Knox

WILLIAM A. KNOX
United States Magistrate Judge

13

Case 2:07-cr-04046-NKL   Document 48   Filed 04/28/08   Page 13 of 13

IT IS, THEREFORE, ORDERED that defendant's oral motion to continue the April 21, 2008 trial setting is granted, and this case is reset for trial on the June 16, 2008 Joint Criminal Docket. [46]  It is further

ORDERED that the additional period of delay in commencing defendant's trial caused by this continuance shall be excluded in computing the time within which this trial shall commence under the Speedy Trial Act.  It is further

ORDERED that defendant's motions for leave to file additional pretrial motions and for discovery are denied as moot. [18, 22, 23]  It is further

ORDERED that defendants' motion for disclosure of informant is granted as ruled on the record. [21]  It is further

RECOMMENDED that defendant's motions to dismiss, for bill of particulars, for disclosure of Rule 404(b) evidence, to suppress evidence and to suppress statements be denied. [14, 16, 17, 19, 20]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days.  If additional time is needed, a motion for an extension of time must be filed within ten days.  The motion should state the reasons for the request.  See Nash v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983).  Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 28th day of April, 2008, at Jefferson City, Missouri.


William A. Knox

WILLIAM A. KNOX
United States Magistrate Judge