IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-04046-CR-C-NKL |
| ) | |
| WILLIAM HENRY BLACKBURN, ) | |
| ) | |
| Defendant. ) | |

ORDER

Defendant William H. Blackburn ("Blackburn") is charged with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922 and 924. On April 28, 2008, United States Magistrate Judge William A. Knox recommended that the Court enter an Order denying Blackburn's Motion to Dismiss, Motion for Disclosure under Fed. R. Evid. 404(b), Motions to Suppress Evidence and Motion for a Bill of Particulars [Docs. ## 14, 16, 17, 19, 20]. See Report and Recommendation [Doc. # 48]. The parties were advised that they could file written exceptions to the recommendation within ten (10) days pursuant to 28 U.S.C. § 636(b)(1)(C). On May 6, 2008, Blackburn filed objections to Judge Knox's recommendation as to his motions to suppress evidence only. [Docs. ## 19, 20]. Having conducted an independent review of the record, the Court concludes that the recommendations of the Magistrate Judge as to Blackburn's Motions are correct and should be adopted.

1

**I.     Facts**

On July 24, 2007, the Morgan County Sheriff's Department and Mid-Missouri Drug Task Force sought a warrant to search for drugs and stolen property at Blackburn's residence and automobile shop. (Doc. 48, 1). Sheriff's Detective J.D. Williams ("Williams") presented the warrant to Morgan County Prosecuting Attorney Marvin Opie who signed it. Before becoming Prosecutor, Opie had represented Blackburn between 1999 and 2001 when Blackburn was charged with unrelated drug activities (Tr. 7). Under Mo. Rev. Stat. § 542.276, Opie or his designated assistant must sign each warrant authorizing a search in Morgan County.

During the execution of the search warrant, and after evidence was seized, Williams placed Blackburn under arrest. At that time Williams did not read Blackburn any *Miranda* warnings. (Tr. 23-24). Williams then left Blackburn with Chief Deputy David Salzman ("Salzman"). Williams does not remember telling Salzman that Blackburn had not been given a Miranda warning. (Tr. 37).

Subsequently, while still on the scene of the search, Blackburn made incriminating statements to Salzman. (Tr. 65). Salzman testified that Blackburn told him that "[Salzman] didn't need to [read him his rights]." (Tr. 65). Blackburn stated he had purchased the AK-47 assault rifle recovered from his residence from another individual, and stated his intention to sell the rifle later. (Tr. 65). Blackburn also made statements about the methamphetamine found in his residence. (Tr. 66).

After the execution of the warrant, Salzman transported Blackburn to the Sheriff's

2

Department, where Williams interviewed him. During this interview, Blackburn signed a *Miranda* waiver and made statements to Williams about the gun and methamphetamine found in his residence. Blackburn now argues that he was not properly given a Miranda warning and the warrant was deficient because Opie signed the warrant under a conflict of interest.

## II. Discussion

### A. Motion to Suppress Evidence

Blackburn first challenges the validity of the warrant because Opie should not have reviewed or signed the application for search warrant. The Court disagrees. Opie signed the application pursuant to a ministerial requirement of county prosecutors and no information in the affidavit was attributable to him. Williams had the affidavit written and notarized prior to Opie having knowledge of it, and no changes were made to the affidavit after Opie's review. (Tr. 7). Opie testified that at the time of his review of the warrant application, he may have stated to Williams that Blackburn had a prior conviction, but such information is public and is not privileged. (Tr. 14). Williams testified he was aware of Blackburn's prior conviction prior to his talking to Opie. (Tr. 22). Opie's participation in Blackburn's case was limited to the exercise of his ministerial duty; there is no evidence that any information he obtained through the course of his representation of Blackburn was used to secure the warrant or that law enforcement was aware of his past representation.

Blackburn also claims that the affidavit in support of the search warrant is

insufficient to support a finding of probable cause that drugs or stolen property would be found on his property. Whether probable cause exists depends on the totality of the circumstances. *United States v. Gabrio*, 295 F.3d 880, 882-83 (8th Cir. 2002). The totality of circumstances requires a showing of facts "sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *Gabrio* at 883 (quoting *United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000)). "An informant's tip can be sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' or if the tip 'is corroborated by independent evidence.'" *Id*. (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). In this case, probable cause was based on the tip of a confidential informant.

The informant, whose identity was disclosed during the hearing, specifically identified stolen items which he saw at Blackburn's residence. This information was independently confirmed by the burglary report of the Moniteau County Sheriff's Department. It is common for informants to assist law enforcement in hopes of leniency in their own cases, and the fact that the informant in this case is also facing federal charges does not cause the Court to disbelieve his testimony where there is independent confirmation of the information provided. *See Gabrio* at 884.

Even if the affidavit were insufficient to establish probable cause, the search is valid because the officers executing the warrant acted in objective good faith in executing the warrant, which was issued by a neutral judge who found there to be probable cause. *United States v. Leon*, 468 U.S. 897 (1984). The good-faith exception allows evidence

4

obtained pursuant to a facially valid search warrant, later found to be invalid, to be admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant. *Id*. Reliance on a judge's determination of probable cause is reasonable in the execution of a search warrant unless a reasonably well-trained officer would have known the search was illegal despite the judge's authorization. *Id*. at 923, n.23.

Nor is there any support for Blackburn's allegation that the warrant is unconstitutionally vague or general. The constitutional standard for particularity of description in a search warrant is met if the description is sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized. *United States v. Davis*, 557 F.2d 1239, 1248 (8th Cir.1977); *United States v. Johnson*, 541 F.2d 1311, 1313 (8th Cir.1976). The warrant authorizing a search of Blackburn's residence and place of business provided for seizure of (1) items associated with the use or sale of methamphetamine, including records associated with the use or sale of methamphetamine, proceeds from the sale of methamphetamine, and firearms associated with the use or sale of methamphetamine, and (2) any stolen items.

The Court agrees with Judge Knox that the warrant's description of methamphetamine related evidence to be seized was sufficiently particular to enable the officers to reasonably identify the place to be searched and the objects to be seized. The degree of specificity required in a warrant is flexible, and may vary depending on the

5

Case 2:07-cr-04046-NKL   Document 51   Filed 05/28/08   Page 5 of 11

circumstances and the type of items involved. *United States v. Davis*, 542 F.2d 743, 745 (8th Cir.1976). Where the precise identity of goods cannot be ascertained, at the time the warrant is issued, naming generic classes of items is sufficient. *Johnson*, 541 F.2d at 1314. For example, the warrant's description of "weapons associated with the use or sale of methamphetamine," is based on a well recognized nexus between firearms and drug trafficking. *United States v. Espinosa*, 300 F.3d 981, 984 (8th Cir. 2002).

The search warrant's description of "stolen items," is based on the affidavit submitted in support of probable cause for the search. This affidavit references and incorporates a police report of the burglary that occurred in Moniteau County on July 15, 2007. The burglary report sets out with detail the property taken during the burglary, including wrenches described by size and type. A warrant which fails to list the objects of the search but incorporates a document listing the items to be seized does not violate the particularity requirement. *United States v. Gamboa*, 439 F.3d 796, 807 (8th Cir. 2006) (an "affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant."). Based on the burglary report incorporated with the affidavit in support of the search warrant, the warrant's description of "stolen items" is sufficient to permit officers to reasonably ascertain and identify the objects to be seized from Blackburn's residence and automobile shop.

The Court further agrees with Judge Knox that there is no basis to support Blackburn's claims that the information in support of probable cause was too remote to authorize a search for drug-related or stolen items. The drug sale in support of the

6

warrant was witnessed by the confidential informant on July 17, 2007, and the burglary of the Moniteau County residence, from which the informant identified the wrenches in Blackburn's home, occurred on July 15, 2007. The search warrant of Blackburn's home was executed on July 24, 2007. The Eighth Circuit has specifically held that there is no bright-line test for determining when information is stale, and that time factors must be examined in the context of a specific case and the nature of the crime under investigation. *United States. v. LaMorie*, 100 F.3d 547, 554 (8th Cir. 1996). Especially in the context of narcotics operations, intervals of weeks or months between a described act and the warrant application does not make the information stale. *United States v. Smith*, 266 F.3d 902, 904-905 (8th Cir. 2001).

### B.     Motion to Suppress Statements

Blackburn claims that prior to being advised of his *Miranda* rights, Salzman questioned him about the gun found by the law enforcement officers during the execution of the search warrant for his home, and that he provided answers. Blackburn alleges that Williams and Salzman have manufactured an "incredible" story that he began making voluntary statements about the gun. Blackburn claims that after being questioned without the benefit of his *Miranda* warnings while in custody at the scene of the search, Williams subsequently questioned him at the Sheriff's Department using the information obtained by Salzman, violating his rights using the "two-step interrogation technique" held unconstitutional in *Missouri v. Seibert*, 542 U.S. 600 (2004).

The greater weight of the evidence supports Salzman's story. Blackburn was

7

Case 2:07-cr-04046-NKL   Document 51   Filed 05/28/08   Page 7 of 11

taken into custody by Williams. (Tr. 24). Williams left Blackburn with Salzman while he went back to retrieve the stolen property list. While in Salzman's custody, Blackburn wanted to explain the gun and what he characterized as temporary possession before sale. (Tr. 65). Salzman proceeded to remove his *Miranda* warnings card from his pocket to read Blackburn his rights, but Blackburn stated there was no need to do so. Blackburn began to freely speak about the AK-47 assault rifle found in his residence. Blackburn also provided information as to the methamphetamine items found in his residence. Upon completion of the search of Blackburn's residence, Salzman transported Blackburn to the Sheriff's Department where Williams presented a Miranda warning form to Blackburn, which advised Blackburn of his Miranda rights. (Tr. 35). Williams signed and dated the warning form, and Blackburn then signed the waiver of rights form, acknowledging that he understood his rights and that he wished to speak with investigators. The subsequent interview with Blackburn lasted approximately twenty minutes, and at no time during the interview were threats or promises made to the Blackburn. Williams asked Blackburn where he got the rifle and Blackburn identified the individual from whom he purchased the rifle. Blackburn was also questioned about the other items of evidence located in his home, including the wrenches. Blackburn stated he got the wrenches from an individual who owed him money, and that he accepted the wrenches as payment.

The evidence shows that Blackburn's statements to Salzman were made while Blackburn was in custody, without the Miranda warnings being given to him. *Miranda v. Arizona*, 384 U.S. 436 (1966), establishes a rule of law providing that statements obtained

8

from a defendant during a custodial interrogation without full warning of constitutional rights are presumed inadmissable as having been obtained in violation of the Fifth Amendment privilege against self-incrimination. Here, Blackburn's statements to Salzman were made voluntarily and were not the result of any improper coercive tactics which would violate the Fifth Amendment. *See Oregon v. Elstad*, 470 U.S. 298, 314 (1985) (absent deliberate or improper tactics in obtaining Blackburn's initial statement, mere fact that Blackburn made an unwarned admission does not warrant a presumption of compulsion in violation of the Fifth Amendment). Therefore, because Blackburn's statements to Salzman were voluntary and were not in response to interrogation, they do not violate the Fifth Amendment privilege against self-incrimination, and are admissible regardless of whether Blackburn was given the *Miranda* warnings. *United States v. Londondio*, 420 F.3d 777, 783 (8th Cir. 2005).

Blackburn's subsequent statements made at the Sheriff's Department to Williams, however, were the result of an interrogation, and therefore, *Miranda* was applicable. Blackburn signed a waiver form acknowledging his understanding of his rights, indicating he was waiving his rights, and that he was willing to make a statement and answer questions. Blackburn's statements made to Williams are, therefore, admissible because the credible evidence presented shows that Blackburn's statements were voluntarily made after a knowing and voluntary waiver of all rights.

Blackburn's claims that Williams and Salzman obtained his statement at the Sheriff's Department as a result of unconstitutional interrogation is not supported by the

evidence presented at the hearing. In *Missouri v. Seibert*, 542 U.S. 600 (2004), the U. S. Supreme Court held that a two-step process of interrogations whereby interrogation was used to obtain a confession prior to giving the *Miranda* warnings, after which *Miranda* warnings were administered and a confession again obtained, was unconstitutional. *Id*. The Court held that such a deliberate strategy to undermine *Miranda* was a violation of the Fifth Amendment. *Id*. Blackburn's initial statements made to Salzman were not the result of express questioning or coercive action and there is no evidence that Williams exploited Blackburn's statements to Salzman to pressure him into waiving his right to remain silent. In fact, credible testimony at the hearing fails to show that Williams was even made aware of the unwarned statements Blackburn had made earlier to Salzman. The evidence does not support Blackburn's claim that Williams and Salzman conspired to circumvent *Miranda*. There is no basis for suppressing the statements made by Blackburn to Salzman or Williams. *See United States v. Londondio*, 420 F.3d at 783-84.

As for Blackburn's Motions to Dismiss, Motion for Disclosure under Fed. R. Evid. 404(b), Motions to Suppress Evidence and Motion for a Bill of Particulars, the record demonstrates that Judge Knox's Report and Recommendation is correct and should be adopted.

Accordingly, it is

ORDERED that Judge Knox's Report and Recommendation of April 28, 2008 [Doc. # 48], is ADOPTED.

10

s/ Nanette K. Laughrey
                                                         NANETTE K. LAUGHREY
                                                         United States District Judge

Dated: May 28, 2008
Jefferson City, Missouri

11